**Ralph Sydnor WRIGHT, Appellant,**

v.

**Olin G. BLACKWELL, Warden, United States Penitentiary, Atlanta, Georgia, Appellee.**

**No. 26116.**

United States Court of Appeals
Fifth Circuit.

Nov. 1, 1968.

Benjamin H. Oehlert, III, Atlanta, Ga., for appellant.

Charles L. Goodson, U.S. Atty., Theodore E. Smith, Asst. U.S. Atty., Atlanta, Ga., for appellee.

Before WISDOM and AINSWORTH, Circuit Judges, and JOHNSON, District Judge.

AINSWORTH, Circuit Judge:

In this novel habeas corpus proceeding filed by a prisoner in the United States Penitentiary at Atlanta, Georgia, we are called upon to determine the legal effect of the prior granting to the prisoner of a "remandatory release" by the United States Board of Parole.

The essential facts are not in dispute. Appellant Ralph Sydnor Wright, the prisoner involved, was convicted in the United States District Court, Southern District of Florida, for using the mails to defraud and sentenced on July 15, 1960 to three years' imprisonment. Subsequently, he was sentenced in the United States District Court for the Middle District of North Carolina, on December 16, 1960, to four years' imprisonment, the latter sentence to be consecutive to the first sentence imposed. He, therefore, had a total of seven years' imprisonment to serve, and the two terms were properly aggregated in determining eligibility for parole. Newcombe v. Carter, 5 Cir., 1961, 291 F.2d 202. He was mandatorily released on January 15, 1965, under the pro-

visions of 18 U.S.C. § 4163,[1] having served his sentence less good time.[2] There remained 893 days (the earned good-time allowance) of his sentence to be served and upon his release he was deemed to have been released on parole until the expiration of the maximum term (the full seven years' sentence would have expired on June 27, 1967) of his aggregated sentences less 180 days, as provided by 18 U.S.C. § 4164.[3]

Having violated the conditions of his mandatory release he was retaken on November 27, 1965, under a warrant of the United States Board of Parole for retaking prisoners mandatorily released under authority of 18 U.S.C. § 4163, and returned to prison to serve the remaining 893 days of his sentence. See Smith v. Blackwell, 5 Cir., 1966, 367 F.2d 539. His mandatory release was formally revoked by the Board on April 4, 1966, as authorized by 18 U.S.C. § 4207. On his return to prison the record discloses that appellant could earn a total of 234 days possible good time, and, accordingly, that the mandatory release date applying good-time allowance was recomputed as September 16, 1967. On October 4, 1966, he was released again on order of the United States Board of Parole by what the Board termed a "remandatory release," with 581 days of his sentence remaining to be served. At the time of his second release

the full term of his sentence would have expired on May 7, 1968.

On December 19, 1967, he was retaken again on a warrant by the United States Board of Parole for having "violated parole" and returned to prison to commence service of the 581 days of his sentence which remained to be served when he was released on October 4, 1966.

He contends that his present imprisonment under the last-mentioned warrant is unlawful and that when he was released on October 4, 1966 he was thereby reinstated on a "mandatory release" status and supervision of the Parole Board, therefore, terminated 180 days prior to the expiration of his full sentence date, May 7, 1968, that is, on November 9, 1967, as provided by 18 U.S.C. § 4164. Since the last 180 days of a mandatory releasee's term are not spent under supervision, a warrant could not be issued during that period if in fact appellant was then a mandatory releasee. Admittedly, appellant was retaken during the 180-day period, that is, on December 19, 1967.

The United States concedes that if in fact the release was pursuant to 18 U.S.C. § 4164, the so-called mandatory release provision of the statute, supervision would have expired prior to his retaking on December 19, 1967, and his present imprisonment would, therefore, be unlawful.

1. 18 U.S.C. § 4163 reads in pertinent part as follows:
"§ 4163. Discharge
"Except as hereinafter provided a prisoner shall be released at the expiration of his term of sentence less the time deducted for good conduct. * * *"

2. Good time was computed under the provisions of 18 U.S.C. § 4161, which reads in pertinent part as follows:
"§ 4161. Computation generally
"Each prisoner convicted of an offense against the United States and confined in a penal or correctional institution for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence beginning with the day on which the sen-

tence commences to run, as follows:
* * *
"Eight days for each month, if the sentence is not less than five years and less than ten years.
* * * * *
"When two or more consecutive sentences are to be served, the aggregate of the several sentences shall be the basis upon which the deduction shall be computed. * * *"

3. 18 U.S.C. § 4164 reads in pertinent part as follows:
"§ 4164. Released prisoner as parolee
"A prisoner having served his term or terms less good-time deductions shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days . * * *"

See Buchanan v. Blackwell, 5 Cir., 1967, 372 F.2d 451. But the Government urges that his "remandatory release" occurred pursuant to a discretionary act by the Board of Parole prior to the recomputed mandatory release date of September 16, 1967. His release was, therefore, according to the Government, a parole rather than a mandatory release and appellant was still under parole supervision at the time of his retaking on December 19, 1967.

In the affidavit of Claude S. Nock, Jr., Youth Division Executive, Youth Correction Division, United States Board of Parole, affiant states that the record of appellant was reviewed by him and that it disclosed that the Board of Parole by an order dated September 8, 1966, pursuant to 18 U.S.C. § 4203, granted the prisoner a "remandatory release." The affidavit further discloses that this was a Board action which authorized release of the prisoner from the institution prior to his established statutory mandatory release date which had been recomputed as September 16, 1967, under 18 U.S.C. § 4161. A certificate of remandatory release was issued by the Board on September 16, 1966 (a full year prior to the statutory mandatory release date); it listed the full term expiration date of sentence as May 7, 1968, and was executed on October 4, 1966, at which time appellant was released from prison. Mr. Nock's affidavit stated that the Board uses the term "remandatory release" to describe the parole of offenders after their return to custody as mandatory release violators and that such an order is actually an order of parole since it requires discretionary action on the part of members of the Parole Board. We must credit Mr. Nock's affidavit, as did the District Judge, in view of his official position, and since it is clear that under 18 U.S.C. § 5005 members of the Youth Division are also in fact members of the United States Board of Parole and are assigned from time to time to that division by the Attorney General.

We are urged by appellant, however, to determine that when he was released on remandatory release the forfeiture of 893 days good time was in some manner revoked by the Board since its rules state that parole is not granted where such forfeiture remains on the record. (See Rules, United States Board of Parole, effective July 1, 1965, pps. 13–14, under the heading "Granting of Parole in Relation to Loss and Restoration of Good Time or Misconduct." [4])

But appellant mistakes the purpose of the provisions of the rules to which he refers, for they state (p. 13) that "parole may not be granted unless the prisoner has substantially observed the *rules of the institution* in which he is confined." (Emphasis supplied.) The forfeiture of statutory good time referred to at that point in the rules has reference to violations of the institution's rules by the prisoner rather than violations outside

---

4. The rules referred to read in pertinent part as follows:

"Under the law parole may not be granted unless the prisoner has substantially observed the rules of the institution in which he is confined.

"Since the forfeiture of statutory good time indicates that the prisoner has violated the rules to a serious degree, parole is not granted where such *forfeiture* remains on the record. * * *

\* \* \* \* \*

"Where statutory good time has been *forfeited* and not restored by the time of the hearing, parole will be denied, but a request may be made that the Board be informed when and if such good time has been restored. Parole may then be granted if this appears desirable in light of the entire record.

"Neither withheld nor forfeited good time shall abridge the right of the inmate to apply for and receive a parole hearing.

"When an effective date has been set by the Board, release on that date is conditioned upon the maintenance of good prison conduct and the completion of a satisfactory plan for supervision. The Board may reconsider any case prior to release on its own motion, and may reopen and advance, postpone, or deny a parole which has been granted. The Board may add to or modify the conditions of parole at any time."

the prison, such as occasioned revocation of parole in this case.

 During new service it was necessary, of course, that he be credited at the statutory rate (provided in 18 U.S. C. § 4161) with good time accumulated during any service after the revocation of original earned good time. See Stevenson v. United States, W.D.Mich., 1966, 250 F.Supp. 859. According to the Government, he had earned 88 days of good time when remandatorily released, and this earned good time had not been forfeited nor had appellant violated any rules of the institution during incarceration. He was, therefore, eligible for release at the Board's discretion under its rules, though his service had not yet reached the recomputed statutory mandatory release date. The formula used in arriving at the period at which a prisoner is eligible for release from federal custody is: actual time served plus good time earned should equal the entire sentence or sentences imposed on the prisoner. Wooten v. Wilkinson, 5 Cir., 1959, 265 F.2d 211; Northcutt v. Wilkinson, 5 Cir., 1959, 266 F.2d 2. There is nothing in the Board's rules which limits or prohibits the granting by the Board of a so-called "remandatory release." Such a release is actually a parole granted under the discretion of the Board at a time prior to the recomputed statutory mandatory release date. Obviously, mandatory release and remandatory release are not the same. Nor is it necessary that forfeiture of good time (in this case the originally earned 893 days) be revoked in order for the Board to grant the remandatory release which was issued to appellant on October 4, 1966.

The record does not disclose that there was a revocation of the forfeiture of good time prior to the prisoner's release on October 4, 1966, and we find nothing in the rules that requires an interpretation by us that this occurred by operation of law or otherwise.

It is, therefore, clear to us that when appellant was retaken on December 19, 1967, it was at a time when he was still under parole supervision and, therefore, that his present imprisonment is fully authorized by law and the rules of the United States Board of Parole.

Affirmed.